**Opinion issued November 21, 2023**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NOs. 01-22-00914-CR, 01-22-00915-CR**

_____

**JOHN ELOY OROZCO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case Nos. 94143-CR, 94144-CR**

---

### MEMORANDUM OPINION

A jury convicted Appellant John Eloy Orozco of the first-degree felony offense of aggravated sexual assault of a child–habitual and the first-degree felony offense of aggravated kidnapping–habitual, and after finding two enhancement

paragraphs true, assessed Appellant's punishment at life in prison for each offense.[1] The trial court ordered Appellant's sentences to run consecutively at the Texas Department of Criminal Justice, Institutional Division.

In his sole issue on appeal, Appellant argues the trial court violated his Sixth Amendment right to confrontation under the Confrontation Clause by (1) admitting a report prepared by a sexual assault nurse examiner that contained the complainant's out-of-court statements; and (2) admitting the sexual assault nurse examiner's testimony regarding those statements.

Because Appellant was afforded a full opportunity to confront and cross-examine the nurse examiner and the complainant at trial, we conclude the trial court did not violate his right to confrontation under the Sixth Amendment. We affirm the trial court's judgment.

## Background

Appellant John Eloy Orozco was charged by indictment in two separate cases with the first-degree offense of aggravated sexual assault of a child–habitual and the first-degree felony offense of aggravated kidnapping–habitual. In the first case, the State alleged Orozco sexually assaulted Betty,[2] a child younger than seventeen years

---

[1] Appellant was charged with sexual assault of a child-habitual in Cause No. 94143-CR, which was consolidated with Cause No. 94144-CR, where Appellant was charged with aggravated kidnapping-habitual.

[2] Because the complainant was a minor when the offenses occurred, we are referring to her by the pseudonym "Betty" to protect her identity.

of age, by intentionally and knowingly causing the penetration of Betty's sexual organ by Orozco's sexual organ. In the second case, later consolidated with the first, Orozco was charged with intending to facilitate the commission of a felony, by intentionally or knowingly abducting Betty by restricting her movements without her consent as to interfere substantially with her liberty, by moving her from one place to another or confining her with intent to prevent her liberation, or by secreting and holding her in a place where Betty was not likely to be found.

Orozco pleaded not guilty, and the case proceeded to a jury trial. The jury found the defendant guilty of both charges. The trial court sentenced Orozco to life in prison for each offense with the sentences to run consecutively. Orozco does not challenge the sufficiency of the evidence supporting his convictions for either offense. On appeal, he challenges only the admission of statements Betty made to Jo McDonald, the sexual assault nurse examiner who examined Betty after the alleged sexual assault and abduction. We thus limit our recitation of the facts to McDonald's and Betty's testimony at trial.

## A. Nurse Jo McDonald

Jo McDonald, a board-certified emergency nurse, is also certified through the State as a sexual assault nurse examiner ("SANE"). McDonald testified that as a SANE, she performs medical forensic exams for victims of sexual assault. On the day of the alleged sexual assault and abduction, McDonald performed a medical

forensic exam on Betty, and she documented her findings in a written report admitted at trial as State's Exhibit 12.

Explaining the process for a medical forensic exam, McDonald testified that after obtaining consent to perform a SANE exam, she obtains the patient's medical history and "a history from the patient, which is basically their words as to what has happened to them." When asked if that history is "important for you in order to provide medical treatment," McDonald testified, "The history allows me to know where I need to focus my exam, where on the body. It also allows me to know where to collect evidence, as well as what medical treatment may be recommended for this patient." After obtaining the patient's history and medical history, McDonald performs the physical examination. McDonald testified that she prepares a report documenting the examination.

During McDonald's testimony, the State offered into evidence State's Exhibit 12, which McDonald testified was a fair and accurate representation of the report she prepared documenting Betty's SANE examination. The State offered McDonald's report into evidence as a business record affidavit. Orozco objected, arguing McDonald's report violated his rights under the Confrontation Clause because it contained out-of-court statements made by Betty to McDonald during the

SANE examination.[3] The trial court overruled his objection, at which time Orozco's counsel asked to approach the bench. During the bench conference, Orozco's counsel argued:

> What our objection really goes to is confrontation clause in that—I know there's an exception for medical record diagnoses. However, [*Crawford v. Washington*, 541 U.S. 36 (2004)] deals with when records are made for the purposes of future criminal litigation, which a SANE exam is.
>
> Now, once [Betty] testifies to all that, maybe everything gets fixed. But at this moment in time, we are—there's no way we could properly cross-examine that document based on the testimony in it given by [Betty]. So our objection is under *Crawford* and confrontation.

The trial court overruled Orozco's objection and admitted State's Exhibit 12 into evidence. McDonald read extensively from her report and testified about statements Betty made to her during the SANE examination.[4]

Orozco cross-examined McDonald about the contents of her report and Orozco does not contend, nor does the record reflect, that the trial court impeded his

---

[3] Orozco also objected to the admission of the report based on hearsay. On appeal, Orozco acknowledges that the statements were admissible under an exception to the hearsay rule and limits his challenge to the admission of the report to his argument that the admission violated his rights under the Confrontation Clause. *See* TEX. R. EVID. 803(4) (creating exception to hearsay rule for statements made for medical diagnosis or treatment).

[4] Given the issues on appeal, it is not necessary to discuss the details of the alleged sexual assault and kidnapping offenses. We do, however, include an abbreviated discussion of the offenses as testified to by Betty.

ability to question McDonald about the substance of the report or from cross examining McDonald on any topic on which she testified.

**B.      Betty**

The State called Betty as its last witness.  Betty testified that on the day of the assault and kidnapping, she and her boyfriend skipped class and went to Sealy Park. While at the park, she noticed Orozco's car was sitting there and she thought "he was recording or watching us."  Betty returned to school and waited for her ride home.  While she was waiting, Orozco approached her and identified himself as a truancy officer.  Betty, who lives with her aunt, uncle, and cousins, testified she believed Orozco when he claimed he was a truancy officer because just one day before, her aunt had threatened to call a truancy officer on her if she skipped school. Orozco told Betty to get in his car because he wanted to show her a video.  Betty assumed it was a video of her skipping school.

Instead, after Betty got into Orozco's car, he showed her a pornographic video.  He then drove her to a secluded area ten to fifteen minutes away where he showed her another video, made her "smoke some stuff out of a pipe," made her remove her clothes, and sexually assaulted her.  Betty testified that Orozco inserted his penis into her vagina and put his mouth in her vagina.

Betty testified that after another car parked near them, Orozco walked her over to some nearby bushes where he recorded himself sexually assaulting her.  He "had

6

her get on her knees so that he could put his penis in her vagina from behind her." Orozco threatened to hurt Betty and her family if she "snitched." He then drove her home. When Betty's aunt arrived home from the store, she took Betty to the hospital where Betty was examined by McDonald that evening.

Orozco's counsel cross-examined Betty. During his brief examination, Orozco's counsel asked Betty how she got home and whether the person who drove her home dropped her off at a safe location. Betty testified that she was dropped off in the driveway of her home and she agreed that she had been left in a reasonably safe place. Orozco did not question Betty about her statements to McDonald during the SANE exam. Orozco does not argue, nor does the record reflect, that the trial court prohibited Orozco from questioning Betty about her out-of-court statements or otherwise placed any limitations on the scope of Orozco's cross-examination of Betty.

## Confrontation Clause

Orozco argues that the admission of Betty's out-of-court statements contained in McDonald's report (State's Exhibit 12) and McDonald's testimony concerning those statements violated his rights under the Confrontation Clause because Betty's statements to McDonald were testimonial, Orozco had not previously cross-examined Betty, and at the time the report was admitted into evidence, he did not know if Betty would testify at trial.

7

The State responds that the admission of Betty's out-of-court statements contained in McDonald's report and McDonald's testimony did not violate Orozco's rights under the Confrontation Clause because Betty testified at trial and Orozco had an unrestricted opportunity to question Betty about her out-of-court statements during cross-examination. The State also argues that the admission of Betty's out-of-court statements to McDonald did not violate Orozco's rights under the Confrontation Clause because Betty's statements to McDonald were non-testimonial.[5]

## A. Standard of Review and Applicable Law

The Sixth Amendment's Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. Under the Confrontation Clause, testimonial statements of a witness who does not appear at trial are prohibited unless the witness is unavailable to testify, and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 52, 59 (2004). When "the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id*. at 59 n.9 (citing *California v. Green*, 399 U.S. 149, 162 (1970)).

---

[5] We need not reach this issue, because even assuming Betty's statements were testimonial, the admission of Betty's out-of-court statements did not violate Orozco's constitutional rights.

"The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id*. at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)); *see also Guzman v. State*, 591 S.W.3d 713, 724 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (holding admission of declarant's out-of-court outcry statement through another witness did not violate defendant's rights under Confrontation Clause because "the declarant of the out-of-court outcry statement, testified at trial and was subject to cross-examination by appellant"); *Crawford v. State*, 139 S.W.3d 462, 465 (Tex. App.—Dallas 2004, pet. ref'd) (holding Confrontation Clause did not bar outcry witness' testimony concerning out-of-court statement by child declarant because declarant testified at trial and therefore defendant had opportunity to cross-examine declarant).

## B.     Analysis

Orozco argues that Betty's out-of-court statements contained in McDonald's written report are testimonial. He posits that the admission of McDonald's report (State's Exhibit 12) and McDonald's testimony concerning Betty's statements in the report violated his rights under the Confrontation Clause because at the time that evidence was admitted, Betty "had not testified nor had she been the subject of prior cross-examination." He further argues that because several witnesses testified between the admission of the challenged evidence and Betty's "eventual in-court testimony," "any cross examination of [Betty] regarding those out-of-court

9

statements [was rendered] functionally useless," and "the State's heavy reliance on [Betty's statements to McDonald] made it such that any later testimony by [Betty] was unnecessary and cross examination of her regarding her prior statements useless." Orozco argues he "could have mounted a more vigorous cross examination of [Betty] on the statements in State's [Exhibit] 12" if Betty had testified shortly after admission of State's Exhibit 12 and McDonald's testimony.

Orozco's arguments are unavailing. Even assuming Betty's out-of-court statements to McDonald were testimonial and thus the Confrontation Clause applies, Orozco was afforded the unrestricted opportunity to cross-examine both McDonald and Betty at trial about the statements and their testimony. His confrontation rights were not violated.

McDonald testified at trial and Orozco had a full opportunity to cross-examine her about the SANE examination and Betty's statements to her. Orozco's cross-examination of McDonald was not impeded. Betty was listed first on the State's witness list, and she also testified at trial. Orozco was afforded the unrestricted opportunity to cross-examine Betty about her testimony at trial and the statements she gave to McDonald during the SANE examination. The record does not reflect that the trial court placed any limits on the scope of Orozco's cross-examination of Betty. Thus, even assuming Betty's statements to McDonald were testimonial, the admission of her statements through State's Exhibit 12 and McDonald's testimony

10

did not violate Orozco's rights under the Confrontation Clause. *See Guzman*, 591 S.W.3d at 724 (holding admission of declarant's out-of-court outcry statement through another witness did not violate defendant's rights under Confrontation Clause because "the declarant of the out-of-court outcry statement, testified at trial and was subject to cross-examination by appellant"); *Eustis v. State*, 191 S.W.3d 879, 886 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding Confrontation Clause was not violated when declarant testified at trial and defendant had opportunity to question declarant about her out-of-court statements during cross-examination); *see also Nuncio v. State*, No. 01-16-00118-CR, 2016 WL 7164059, at *3 (Tex. App.—Houston [1st Dist.] Dec. 8, 2016, no pet.) (mem. op., not designated for publication) (holding Confrontation Clause was not violated by admission of declarant's 911 call or officer's testimony about statements declarant had made to him because declarant testified during defendant's case-in-chief, and thus defendant was "afforded the opportunity to examine [declarant] about her out-of-court statements").

We overrule Orozco's sole issue.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

11

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.

Do Not Publish. TEX. R. APP. P. 47.2(b).